**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------x
ROBERTO RIVERA, M.D.,                          :
                                               :
                    Plaintiff,                 :
                                               :
          v.                                   :    07-CV-3246 (BSJ)(AJP)
                                               :
RUTH E. SMITH, M.D.,                           :    **Order**
JESS A. BUNSHAFT, ESQ., and                    :
SAINT VINCENT'S CATHOLIC MEDICAL               :
CENTERS,                                       :
                                               :
                    Defendants.                :
------------------------------------x
**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

Pro se plaintiff Robert Rivera ("Rivera") has filed suit against defendants Ruth E. Smith, M.D., Jess A. Bunshaft, Esq., and Saint Vincent's Catholic Medical Centers (collectively "Defendants") alleging seven causes of action arising out of his employment with and subsequent termination from Saint Vincent's Catholic Medical Centers("Medical Center"). Before the Court is the Defendants' motion to dismiss Rivera's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state any claims upon which relief may be granted. For the reasons set forth below, Defendants' motion is GRANTED with respect to Counts III, IV, and V and DENIED with respect to Counts I, II, VI, and VII.

## I.    BACKGROUND

Rivera has alleged the following facts.  Rivera began working at the Department of Community Medicine at St. Vincent's Hospital Manhattan on October 1, 1991.  Rivera's 2d Am. Compl. ¶ 27.  During his employment at the hospital, Rivera developed a "deep friendship" with an associate, "F.D.", a family nurse practitioner also employed in the Department of Community Medicine.  Id. ¶ 29.  In March 2003, Rivera and F.D. terminated their friendship, but continued to work in close proximity in the Department of Community Medicine.  Id.

A series of events in 2005 laid the foundation for Rivera's ultimate dismissal from the hospital.  In 2005, Rivera separated from his wife and moved to the same Brooklyn community where F.D. lived.  Rivera's 2d Am. Compl. ¶ 31.  On May 18, 2006, Rivera and F.D. passed each other while riding their bicycles home from work.  Id. ¶ 33.  The next day, F.D. accused Rivera of stalking her.  Id. ¶ 34.  Over the next several days, F.D. and Rivera had two angry exchanges in the presence of patients.  Id. ¶ 35.  On May 22, 2005, F.D. declared to Rivera that she would no longer talk to him under any circumstances, even when in a professional environment.  Id. ¶ 36.  Rivera subsequently requested a transfer to another worksite.  Id. ¶ 37.

On May 23, 2006, Rivera was informed that F.D. had lodged a complaint against Rivera, that he was reassigned to another

worksite, and that Rivera was forbidden from contacting F.D. pending the resolution of the complaint. Rivera's 2d Am. Compl. ¶ 39. On May 25, 2006, Rivera discussed the situation with the Chairman of the Department of Community Medicine, Dr. Russell Kellogg. Id. ¶ 41. Dr. Kellogg suggested that Rivera undergo psychological therapy, and, upon Rivera's assent, arranged with Defendant Ruth Smith to provide Rivera with a no-cost therapy session. Id. ¶ 42.

On May 26, 2006, Rivera attended the therapy session scheduled by Ruth Smith, and later that day met with Defendant Jess A. Bunshaft, the Director of Human Resources at St. Vincent's Hospital to discuss F.D.'s complaint. Rivera's 2d Am. Compl. ¶¶ 43-44. According to Rivera, Bunshaft reviewed the facts of F.D.'s complaint with Rivera, but would not reveal the content or nature of that complaint. Id. Bunshaft then allegedly assured Rivera, that he would "'have plenty of chances to clear [himself].'" Id. (quoting Bunshaft). Bunshaft informed Rivera that he was formally suspended from his position, asked him to surrender his employment badge, and instructed him not to set foot on St. Vincent's Hospital property or contact F.D. Id. ¶ 45.

On June 1, 2006, Rivera attended a meeting with Dr. Kellogg and Ruth Smith. Rivera's 2d Am. Compl. ¶ 46. Rivera states that he believed that the meeting was part of a preliminary

investigation, and that he would be given an opportunity to defend himself against the charges in the complaint. Id. ¶ 47. At the end of the meeting, Smith formally requested that Rivera undergo a full psychiatric evaluation by the Committee for Physician's Health ("CPH"). Id. Rivera refused to participate in the evaluation. Id. Smith stated that Rivera could not return to work until he received a "medical certificate of fitness to work" from the CPH. Id. Rivera reiterated that he would not undertake a psychiatric evaluation and left the meeting. Id.

On June 6, 2006, Smith wrote a letter to Rivera restating her demand that Rivera undergo a psychiatric evaluation and setting a deadline of June 16, 2006 for his compliance. Rivera's 2d Am. Compl. ¶ 49. If Rivera did not agree to the Hospital's demands by that date, termination proceedings would begin. Id. On June 13, 2006, Rivera consulted an attorney. Id. ¶ 54. Rivera and the attorney agreed that Rivera should not consent to the psychiatric examination and should instead proceed with a formal hearing, which he believed he had been promised, at St. Vincent's Hospital. Id. Consequently, on June 16, 2006, Rivera wrote a letter to Smith, Bunshaft, and Kellogg that he would not undergo a psychiatric evaluation by the CPH. Id. ¶ 55. On June 29, 2006, Rivera wrote "one final letter" to F.D. informing her that he was moving away from Brooklyn, expressing sorrow at the

4

current circumstances, and promising not to send her any more
holiday cards.  Id. ¶ 56.  On June 30, Rivera moved away from
Brooklyn.  Id. ¶ 57.

On July 6, 2006, Rivera received a certified letter from
Bunshaft informing him that his employment had been terminated.
Rivera's 2d Am. Compl. ¶ 58.  The letter stated three reasons
for his termination: 1) Rivera's refusal to undergo the
requested CPH evaluation, 2) Rivera's indication that he would
refuse therapy even if it was recommended, and 3) Rivera's
communication with F.D. through the June 29 letter despite his
being asked not to communicate with her.  Id.

At the time of his dismissal, Rivera had attained the dual-
rank of Associate Attending Physician in both the Department of
Medicine as well as the Department of Community Medicine at St.
Vincent's Hospital.  Id. ¶ 27.

## II.  RIVERA'S CLAIMS

Rivera asserts the following seven claims.[1]  Rivera claims
that the Defendants ordered him to undergo a psychiatric
examination in violation of the Americans With Disabilities Act
of 1990 ("ADA"), 42 U.S.C. § 12101, et seq., and New York
Executive Law § 296 (Counts I and II), negligently
misrepresented the process that Rivera would receive prior to

---

[1] Rivera has consented to the dismissal of his ADA claims against Defendants
Smith and Bunshaft and his intentional infliction of emotional distress
claims in their entirety. See  Rivera's Opp. ¶¶ 4, 7.

his discharge (Count III), wrongfully discharged him by breach
of an oral promise to grant Rivera specific procedures prior to
his discharge (Counts IV and V), and finally, discharged him
without affording him the procedural safeguards identified in
the St. Vincent Catholic Medical Centers - Manhattan Service
Division Rules and Regulations and also in the St. Vincent
Catholic Medical Centers of New York – Systemwide Medical Staff
Bylaws as required by his employment contract (Counts VI and
VII).

### III. STANDARD FOR DECIDING MOTION TO DISMISS

A motion to dismiss pursuant to Rule 12(b)(6) of the
Federal Rules of Civil Procedure may be granted only if "it
appears beyond doubt that the plaintiff can prove no set of
facts in support of his claim which would entitle him to
relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see Cohen
v. Koenig, 25 F.3d 1168, 1172 (2d Cir. 1994). The court must
take all the facts alleged in the complaint as true and draw all
reasonable inferences in favor of the non-moving party. See
Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co., 32 F.3d 697,
699-700 (2d Cir.1994).

In deciding a motion to dismiss for failure to state a
claim upon which relief can be granted pursuant to Rule
12(b)(6), a court looks only to the four corners of the
complaint and evaluates the legal viability of the allegations

contained therein. See Fed. R. Civ. P. 12(b)(6); Cortec Indus.,
Inc v. Sum Holdings L.P., 949 F.2d 42, 47 (2d Cir.1991), cert.
denied, 503 U.S. 960 (1992). The court's function is "merely to
assess the legal feasibility of the complaint, not to assay the
weight of the evidence which might be offered in support
thereof." Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir.
1980). A complaint should not be dismissed unless it appears
beyond doubt that the plaintiff can prove no set of facts in
support of his claim that would entitle him to the relief
requested. See Branum v. Clark, 927 F.2d 698, 705 (2d Cir.
1991). Furthermore, a court should construe a pro se
plaintiff's complaint broadly so that it presents the strongest
possible argument. Cruz v. Gomez, 202 F.3d 593, 597 (2d Cir.
2000).

### III. DISCUSSION

As an initial matter, Rivera argues that he cannot adequately
address this motion to dismiss because the Defendants have
denied him access to or knowledge of the complaints filed
against him by F.D. Rivera's Affirmation in Opp. to Mot. to
Dismiss 2d Am. Compl. ¶ 1 [hereinafter "Rivera's Opposition"].
However, Rivera does not need access to F.D.'s complaint in
order to overcome a motion to dismiss for failure to state a
claim. Rivera's entire burden at this point is to adequately
establish the essential elements of his claim. The content of

F.D.'s complaint might provide material facts as to whether Rivera's termination was appropriate; but that question does not need to be answered until later in the litigation — either during the course of a summary judgment motion or at trial.

### A.    Rivera's ADA Claim

Rivera claims that the Medical Center ordered him to undergo psychiatric examinations and treatment in violation of the medical examinations and inquiries provision of the ADA, 42 U.S.C.A. § 12112(d).[2]  Rivera's Opp. ¶ 64.  Under that ADA provision, an employer may "not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity."  42 U.S.C.A. § 12112(d)(4)(A).

A plaintiff raising a discrimination claim under the ADA bears the initial burden of establishing a prima facie disability discrimination case.  Shannon v. N.Y. City Transit Auth., 332 F.3d 95, 99 (2d Cir. 2003); see also Raytheon Co. v. Hernandez, 540 U.S. 44, 49-50 (2003) (upholding circuit court's requirement that plaintiff pursuing a claim under the ADA must

---

[2] Rivera argues that the Defendants' conduct also violated 29 C.F.R. §§ 1630.13, 1630.14, which are part of the ADA's implementing regulations. 29 C.F.R. § 1630.13 echoes the statutory prohibition against medical examinations and inquiries.  29 C.F.R. § 1630.14 identifies permissible medical examinations and inquiries.

establish a prima facie discrimination case according to the
burden shifting scheme established by the Supreme Court in
McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)).  A
plaintiff asserting a violation of the ADA must prove that: (1)
the defendant is covered by the ADA; (2) plaintiff suffers from
or is regarded as suffering from a disability within the meaning
of the ADA; (3) plaintiff was qualified to perform the essential
functions of the job, with or without reasonable accommodation;
and (4) plaintiff suffered an adverse employment action because
of his disability or perceived disability. Capobianco v. City of
New York, 422 F.3d 47, 56 (2d Cir. 2005); see also Shannon, 332
F.3d at 99; Giordano v. City of New York, 274 F.3d 740, 747 (2d
Cir. 2001).

    Here, Defendants argue that Rivera's medical examination
claims brought pursuant to the ADA must be dismissed because he
has failed to establish a prima facie case of disability
discrimination as required by the ADA.  Mem. Law. in Supp.
Defs.' Mot. to Dismiss at 4.  Specifically, Defendants argue
that Rivera has not shown that the Defendants perceived him to
be disabled or that the Defendants' actions gave rise to an
inference of discrimination.  Id. at 7.  Defendants also argue
that Rivera's claim fails because the hospital had a business
related reason for requesting the medical examination.

9

However, Rivera clearly alleges that Defendants required him to undergo a psychological examination in order to keep his job because they "incorrectly perceived [him] as being mentally ill."[3] See Rivera's Opp. at ¶¶ 7-9. This examination certainly qualifies as a "disability-related inquiry." See, e.g., Conroy v. N. Y. State Dept. of Corr. Servs., 333 F.3d 88, 96 (2d Cir. 2003). Under the ADA, such an inquiry is lawful only if it is shown to be "job-related and consistent with business necessity." Transp. Workers Union, Local 100 v. N.Y. City Transit Auth., 341 F.Supp.2d 432, 446-47 (S.D.N.Y. 2004); 42 U.S.C. § 12112(d)(4)(A). Here, Rivera claims that he never threatened, acted violently, harassed, stalked, or sexually harassed F.D. and, more significantly, challenges Defendants' claim that F.D. ever accused him of such acts. Rivera Opp. ¶ 13. Thus, Rivera contends that the ordering of this exam was not "job related" or "consistent with business necessity." Id. ¶¶ 10-12. The Court finds that these allegations are sufficient to state a claim under the ADA's medical examination and inquiry provisions. 42 U.S.C. § 12112(d)(4)(A).

It is possible that Defendants will be able to defeat Rivera's medical examination claim on a Summary Judgment motion by establishing that requiring Rivera to undergo a medical

---

[3] Although Rivera offers conclusory statements that may be construed to contradict this allegation, the Court has an obligation to broadly construe a pro se plaintiff's complaint so that it presents the strongest possible arguments. Cruz v. Gomez, 202 F.3d 593, 597 (2d Cir. 2000).

examination was "job related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). However, this is an affirmative defense as to which the employer has the burden of proof. When determining a 12(b)(6) motion to dismiss for failure to state a claim, this court may only look to the four corners of the complaint and evaluate the legal viability of the allegations contained therein. Accordingly, Defendants' motion to dismiss Counts I & II is denied.[4]

---

[4] Count II is Rivera's discrimination claim under the New York Human Rights Law. New York Executive Law § 296(1)(a) provides that: ""[i]t shall be an unlawful discriminatory practice . . . [f]or an employer . . . because of the age, race, creed, color, national origin, sex, or disability, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual." As with an ADA claim, a plaintiff bringing a claim under the New York Human Rights Law ("NYHRL") must establish a prima facie case of discrimination. See Pellegrino v. County Of Orange, 313 F. Supp. 2d 303, 314 (S.D.N.Y. 2004). The same elements which comprise an ADA prima facie case also apply to a claim under the NYHRL. *See Reeves v. Johnson Controls World Servs., Inc.,* 140 F.3d 144, 154-57 (2d Cir.1998). The definition of a "disability" in the NYHRL is similar to the ADA's definition.  See Schwartz v. The Comex, No. 96 Civ. 3386, 1997 U.S. Dist. LEXIS 4658, at *10-11 (S.D.N.Y. Apr. 2, 1997); see also Reeves v. Johnson Controls World Servs., Inc, 140 F.3d 144, 155 (2d Cir. 1998).  The NYHRL defines "disability" as: "a physical, mental or medical impairment resulting from anatomical, physiological or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques." N.Y. Exec. Law § 292(21).  Additionally, NYHRL has a provision, like that of the ADA, which allows individuals "regarded as" having a disability to seek the protection of the statute. N.Y. Exec. Law § 292(21)(c). Here, as noted above, Rivera has alleged that Defendants perceived him to be mentally ill and that Rivera suffered an adverse employment action because of that disability. See Rivera's Opp. at ¶¶ 7-9. This allegation suffices to establish a prima facie case under the NYHRL.  Accordingly, Defendant's motion to dismiss Count II is denied.

**B.    Rivera's Wrongful Discharge Claims**

Rivera alleges negligent misrepresentation,[5] promissory
estoppel, and breach of oral contract claims stemming from
promises allegedly made to him by Jess Bunshaft that were
"subsequently disregarded and ignored by all three of the
defendants culminating in plaintiff's unjust dismissal from
employment."  Rivera's 2d Am. Compl. ¶ 24.  All three of these
claims "refer to the same set of promises made to [him] around
the time of his discharge that he would be afforded due process
before discharge or other disciplinary action was taken, and
that he was denied the same.  The difference between the . . .
charges is only one of degree and relief asked for."  Rivera's
Opp. ¶ 37.

Rivera claims that Bunshaft promised Rivera that the
hospital would undertake specific procedures with respect to the
complaint against him and that Rivera would have a chance to
defend himself before being terminated.  Rivera's 2d Am. Compl.
¶¶ 37, 38, 40.  Rivera contends that Bunshaft's statements
created an oral contract independent of his written employment
contract with the hospital.  Rivera argues that pursuant to
Bunshaft's statements, the hospital no longer had the right to
terminate Rivera until the procedures described by Bunshaft were

---

[5] Rivera clarifies that his negligent misrepresentation claim is a tort action,
not a breach of contract action.  Rivera Opp. ¶ 35.

followed.  Rivera claims that he relied on these promises, and
that this reliance led to his termination and subsequent
inability to find new employment, as well as irreparable harm to
his name, reputation, emotional health, and financial stability
. . . . [and] has been unable . . . to find comparable
employment."  Rivera's 2d Am. Compl. ¶ ¶ 37, 39; Rivera's Opp. ¶
42.

Rivera concedes that he is an at will employee. Rivera's
Opp. ¶ 33.  Under New York law an employer's "unfettered right
to terminate at-will" can only be limited by express agreement.
Sabetay v. Sterling Drug, Inc., 514 N.Y.S.2d 209, 213 (N.Y.
1987).  Oral assurances alone cannot establish a claim for an
employment contract.  See Colodney v. Continuum Health Partners,
Inc., 2004 U.S. Dist. LEXIS 6606, at *16; Skelly v. Visiting
Nurse Ass'n, 619 N.Y.S.2d 879, 881 (N.Y. Sup. Ct. 1994).

Bunshaft's statements did not constitute an agreement
establishing an employment term of fixed duration, nor an
express limitation on the Hospital's right to terminate Rivera
at will.  Therefore, Rivera remained an at-will employee and the
Defendants' retained their right to terminate Rivera at any
time.  Since the hospital did not relinquish its right to
discharge Rivera at-will, Rivera cannot establish any of his
claims based on Bunshaft's statements.  The court will briefly
address each of these claims in more detail.

### i.  Negligent Misrepresentation Claim

To establish a negligent misrepresentation claim, a plaintiff must show that 1) the defendant had a duty to the plaintiff based on some "special relationship" with the plaintiff, 2) the defendant provided false or incorrect information to the plaintiff, and 3) the plaintiff reasonably relied upon the defendant's information.  <u>Bower v. Atlis Systems, Inc.</u>, 582 N.Y.S.2d 542, 543-544 (N.Y. App. Div. 3d Dept. 1992).  An at-will employee, however, may be terminated without cause and at any time.  <u>Id.</u>; <u>Marino v. Oakwood Care Center</u>, 774 N.Y.S.2d 562, 563 (N.Y. App. Div. 2d Dep't. 2004); <u>Sabetay v. Sterling</u>, 514 N.Y.S.2d 209, 211-212 (N.Y. 1987).  Therefore, it is unreasonable for an at-will employee to rely on an employer's *unwritten* assurance not to terminate him or to provide him with specific procedures before terminating him.  <u>See</u> <u>Bower</u>, 582 N.Y.S.2d at 544; <u>Lowe v. Amerigas, Inc.</u>, No. 99-7813, 2000 U.S. App. LEXIS 3801, at *8 (2d Cir. Mar. 10, 2000).

As already noted, Rivera concedes that he is an at-will employee.  Rivera's Opp. ¶ 33.  Therefore, to the extent that Rivera relied on Bunshaft's statements, that reliance was unreasonable.  Absent a written contract altering the terms of his employment, Rivera could not have reasonably believed that Bunshaft's words alone would supersede the hospital's right to terminate him at will.  <u>See</u> <u>Lowe v. Amerigas, Inc.</u>, No. 99-

14

7813, 2000 U.S. App. LEXIS 3801, at *8 (2d Cir. Mar. 10, 2000).
Since Rivera's at-will employment status negates his claim of
reasonable reliance, Rivera cannot establish a negligent
misrepresentation claim.  Accordingly, Defendants' motion to
dismiss Count III is granted.[6]

### ii. Promissory Estoppel Claim

To establish a claim for promissory estoppel, a plaintiff
must show 1) a clear and unambiguous promise, and 2) reasonable
and foreseeable reliance by the party to whom the promise was
made, and 3) injury to the party by reason of his reliance.
LeBoeuf v. New York Univ. Med. Ctr., No. 98 Civ. 0973, 2000 U.S.
Dist. Lexis 18263 (S.D.N.Y. Dec. 20, 2000); Aspan v. Gemini
Consulting, Inc., No. 98 Civ. 1256, 1999 U.S. Dist. LEXIS 1104,
at *13 (S.D.N.Y. Feb. 9, 1999); see Quirk v. Am. Management
Systems, Inc., No. 01 Civ 6813, 2002 U.S. Dist. Lexis 22678, at
*9 (S.D.N.Y. Nov. 21, 2002).

"New York law does not recognize promissory estoppel as a
valid cause of action in the employment context." Miller v.
Citicorp, No. 95 Civ. 9728, 1997 U.S. Dist. LEXIS 2395, at * 28
(S.D.N.Y. Mar. 4, 1997).  However, even if the claim was
available to him, Rivera has not presented facts establishing
the required elements.  First, Bunshaft's statements do not

---

[6] Having concluded that Rivera cannot establish his negligent misrepresentation
claim, this Court will not address the Defendants argument that Rivera's
negligent misrepresentation claim is barred by the New York State Worker's
Compensation Law.  See Mem. Law. in Supp. Defs.' Mot. to Dismiss at 10.

constitute a "clear and unambiguous" promise.  Bunshaft
repeatedly told Rivera that Rivera would have "plenty of chances
to clear [himself]."  Rivera's 2d Am. Compl. ¶ 20.  This
statement is not a promise that Bunshaft or the hospital would
provide him with specific procedures, but is a "general
assurance" that the hospital's investigation and procedures
would include a chance for Rivera to state his case.  "General
assurances," however, cannot form the basis of a promissory
estoppel claim.  Quirk, 2002 U.S. Dist. LEXIS 22678, at *9.
Second, as stated supra, Rivera could not, as an at-will
employee, reasonably rely on those statements as establishing
extra-contract pre-termination proceedings.  See Bower, 582
N.Y.S.2d at 544.

    Rivera also characterizes his promissory estoppel claim as
a quasi-contract claim based on promises "made to him at about
the time of his discharge." River Opp. ¶ 35.  A promissory
estoppel claim, however, is different from a quasi-contract
claim.  A quasi-contract, is not a contract, but instead a "mere
fiction" recognized by courts "where there has been no agreement
or expression of assent, by word or act, on the part of either
party involved."  Clark-Fitzpatrick, Inc. v. Long Island Rail
Road Co., 516 N.E.2d 190, 193 (N.Y. 1987) (quoting Bradkin v.
Leverton, 257 N.E.2d 643, 645 (N.Y. 1970)).  It "is not really a
contract at all, but rather a legal obligation imposed in order

to prevent unjust enrichment."  Id.

Here, the existence of a written employment contract with the Defendants precludes Rivera from bringing a quasi-contract claim arising out of the same subject matter.  See Clark-Fitzpatrick, Inc., 516 N.E.2d at 193.  Also, Rivera has not alleged that the Defendants' benefited from any unjust enrichment due to Bunshaft's statements.  See Bradkin at 656.  Accordingly, Defendants' motion to dismiss Count IV is granted.

### iii. Oral Contract Claim

Finally, Rivera cannot establish a claim that Bunshaft's statements constituted an oral contract guaranteeing him procedural protections prior to his termination.  New York courts are reluctant to recognize oral contracts limiting an employer's right to terminate an employee at-will.  See Colodney v. Continuum Health Partners, Inc., 2004 U.S. Dist. LEXIS 6606, at *16 ("Oral assurances in conjunction with "general provisions in the employee manual" are insufficient to state a claim for an implied employment contract."); Quirk, 2002 U.S. Dist. LEXIS at *9 (holding that an employer's promises of long term employment were not clear and unambiguous promises to alter the employee's at-will status); see Lowe v. Amerigas, Inc., No. 99-7813, 2000 U.S. App. LEXIS 3801, at *8 (holding that an implied oral contract for procedural job protection could not exist when employee was aware of his at-will employment status).

17

Rivera concedes that oral contracts are disallowed in New York in the employment context. Rivera's Opp. ¶ 34. Rivera argues, however, that he can establish an oral contract claim because his oral contract with Bunshaft was not an "employment contract," but was instead "an oral contract to grant full due process to plaintiff before rendering a verdict on his further employment." Id. ¶ 36. This Court finds that if the alleged agreement between Bunshaft and Rivera is a contract, it cannot be anything other than an employment contract. Rivera, in his own words, says that the agreement was "to grant [Rivera] full due process . . . before rendering a verdict on his further employment." Rivera's Opp. ¶36. The injury resulting from the breach was his termination from employment at the St. Vincent's Medical Center. Rivera's 2d Am. Compl. ¶ 40. The "agreement" would have limited the Medical Center's right to terminate Rivera at-will. Such an agreement, altering an employer's right to terminate an employee at-will, is invalid under New York law. Accordingly, Defendants' motion to dismiss Count V is granted.

**C.  Rivera's Privileging Claims**

Rivera's remaining claims[7] are based on allegations that the Defendants' breached their contractual obligations established in the St. Vincent Catholic Medical Centers - Manhattan Service

---

[7] The two claims are essentially same, but the first is addressed to St Vincent's Hospital-Manhattan and the second is addressed to St Vincent's Catholic Medical Centers, the hospital's not-for-profit corporate parent. Rivera's Opp. ¶ 53.

Division Rules and Regulations and also in the St. Vincent
Catholic Medical Centers of New York – Systemwide Medical Staff
Bylaws ". . . when they failed to follow dismissal guidelines
and dismissed plaintiff without just cause, confiscating his
employment credentials, as well as forbidding him to set foot
upon St. Vincent's Hospital property in any professional
capacity, henceforth."  Rivera's 2d Am. Compl. ¶ 25.  Defendants
argue that these claims must be dismissed because the Public
Health Council("PHC") has exclusive, primary jurisdiction over
these claims.

Under New York law, a hospital may not diminish a
physician's medical privileges "without stating the reasons
therefore, or if the reasons stated are unrelated to standards
of patient care, patient welfare, the objectives of the
institution or the character or competency of the applicant."
N.Y. Pub. Health Law § 2801-b(1).  A physician aggrieved under
this provision may file a complaint with the Public Health
Council ("PHC"), N.Y. Public Health Law § 2801-b(2).  The PHC
must then investigate the complaint, and if it finds that the
complaint has merit, it must direct the offending hospital's
governing board to review its adverse action.  Id. § 2801-b(3).

Under the doctrine of primary jurisdiction, New York courts
have held that this provision of the Public Health Law requires
physicians who wish to challenge the diminution of their medical

19

privileges in court to first file a complaint with the PHC.[8]
Johnson v. Nyack Hosp., 964 F.2d 116, 120 (2d Cir. 1992) ("A
physician who wants his privileges restored must first file a
complaint with the New York Public Health Council ("PHC") prior
to seeking redress in the courts."); Gelbard v. Genesee Hosp.,
664 N.E.2d 1240, 1242 (N.Y. 1996) (holding that the Public
Health Law mandates a "threshold [Public Health Council] review
in all cases in which a physician seeks injunctive relief to
compel the restoration of staff privileges").

    The primary jurisdiction doctrine is applicable when a
regulatory scheme places the resolution of certain issues within
the "'special competence of an administrative body.'"  Id.
(quoting United States v. Western Pac. R.R. Co., 352 U.S. 59, 63
(1956)).   A hospital's decision to grant or deny staff
privileges is often based on specialized medical considerations.
Unlike the courts, which are by and large untrained and
inexperienced in these matters, the PHC is a body of medical
experts dedicated to the review of complex medical care issues,
including issues related to the grant or denial of hospital
staff privileges (see generally, Public Health Law § 225).  Thus,

---

[8] Under the doctrine of primary jurisdiction, a physician seeking
reinstatement of medical privileges must undergo the threshold PHC review
even if he frames his challenge as a breach of contract.  Gelbard v. Genesee
Hosp., 664 N.E.2d 1240, 1243 (N.Y. 1996).  "Were plaintiff permitted to
bypass threshold PHC review simply by asserting a breach of contract claim,
the carefully calibrated statutory progression . . . with its insistence on
PHC review before a court can order the restoration of staff privileges,
would be undermined."  Id.

the requirement that PHC have primary jurisdiction over privileging claims ensures that before a court orders the restoration of a physician's staff privileges, the PHC has had an opportunity to apply its expertise to the issues at hand.

However, "primary jurisdiction is a discretionary doctrine that will be applied only where it serves at least one of two purposes: 'uniformity' and 'reliance on administrative expertise.'" Bauman v. Mt. Sinai Hosp., 452 F. Supp. 2d 490, 499 (S.D.N.Y. 2006)(quoting Tassy v. Brunswick Hosp. Ctr., Inc., 296 F.3d 65, 68 (2d Cir. 2002). Consideration of this second purpose of the primary jurisdiction doctrine has led to two narrow exceptions to the general requirement. Bauman, 452 F. Supp. 2d at 500. First, a court may exercise jurisdiction over termination suits even though a PHC complaint has not been filed, "in cases wherein the physician's privileges have been terminated for reasons that do not pertain to medical care, and therefore do not invoke the particular expertise of the PHC." Mahmud v. Bon Secours Charity Health System, 289 F. Supp. 2d 466, 473 (S.D.N.Y. 2003) (citing Tassy, 296 F.3d at 70—71). Second, a physician need not file a complaint with the PHC when "the plaintiff seeks damages, but not reinstatement; and . . . the presence or absence of a proper medical reason for terminating the plaintiff's privileges is not dispositive of the plaintiff's claims." Id.

The Court finds that this case falls within the first of these exceptions.[9]  Here, the circumstances underlying Rivera's termination do not implicate his ability to provide competent medical service to patients.  Indeed, the facts of this case are analogous to those in Tassy v. Brunswick Hosp. Ctr., Inc., 296 F.3d 65, 68 (2d Cir. 2002).  In Tassy, the plaintiff physician whose staff privileges were revoked following allegations of sexual harassment brought a discrimination claim under 42 U.S.C. § 1981 against a hospital alleging that he had been suspended because of his race and national origin.  Tassy, 296 F.3d at 66. The defendant hospital moved to dismiss the case because the doctrine of primary jurisdiction required the physician to first file his complaint with the PHC.  The court found that the alleged sexual harassment was the primary factual issue and therefore the PHC's expertise was not necessary.

Likewise, the present case does not present issues requiring the specialized expertise of the PHC.  An evaluation of Rivera's claims requires an assessment of both the substantive justification for Rivera's termination and the procedures taken by the Defendants.  According to Rivera's allegations, his termination was in no way related to his treatment of patients or his competence as a physician and,

---

[9] Rivera is seeking reinstatement and, therefore, his case does not fall within the second exception.

therefore, Defendants did not need to review any patient charts or medical data when deciding to revoke Rivera's privileges. The PHC has no expertise in determining whether a doctor committed acts of non-medical misconduct or whether an employer followed specific termination procedures. Further, medical expertise is not required to make such determinations. Rather, these determinations, like those in Tassy, fall within this Court's "conventional expertise." 296 F.3d at 70. Accordingly, Defendant's motion for summary judgment with respect to claims VI and VII is denied.

## IV.  CONCLUSION

For the reasons set forth above, the motion by Defendants for dismissal for failure to state a claim is GRANTED for Counts II, III, IV, and V.  The motion by Defendants for failure to state a claim is DENIED for Counts I, II, VI, and VII.  The parties are reminded that this case has been referred to Magistrate Judge Peck for general pre-trial purposes.

**SO ORDERED:**

Barbara S. Jones
**UNITED STATES DISTRICT JUDGE**

New York, New York
January 17, 2008

23