UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
                                     :
ROBERTO RIVERA, M.D.,                :
                                     :
                    Plaintiff,       :
        v.                           :   07 Civ. 3246 (BSJ)(AJP)
                                     :   **Opinion & Order**
RUTH E. SMITH, M.D., JESS A.         :
BUNSHAFT, ESQ., and SAINT VINCENT'S  :
HOSPITAL-MANHATTAN (ST. VINCENT'S    :
CATHOLIC MEDICAL CENTERS),           :
                                     :
                    Defendants.      :
                                     :
------------------------------------X

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

On April 23, 2007 pro se Plaintiff Roberto Rivera, M.D. ("Rivera") filed suit against Defendants Ruth E. Smith, M.D., Jess A. Bunshaft, Esq., and Saint Vincent's Catholic Medical Centers ("Medical Center") (collectively "Defendants") alleging claims arising out of his employment with and subsequent termination from Defendant Medical Center. In an Order dated January 17, 2008 the Court dismissed counts III, IV, and V of Plaintiff's complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants now move for summary judgment on all remaining counts. For the reasons set forth below, Defendants' motion for summary judgment with respect to count I is GRANTED. The Court

declines to exercise supplemental jurisdiction over Plaintiff's state law claims, which are DISMISSED without prejudice.[1]

## BACKGROUND

This case arises out of the July 2006 dismissal of Plaintiff from his position as an attending physician at Saint Vincent's Catholic Medical Centers. Plaintiff began his employment at the Medical Center in the Department of Community Medicine on October 1, 1991. (Movants' Rule 56.1 Stmt. ¶ 2; Pl.'s Rule 56.1 Stmt. ¶ 2.) He eventually attained the dual-rank of Associate Attending Physician in both the Department of Medicine and the Department of Community Medicine. (Movants' Rule 56.1 Stmt. ¶ 2; Pl.'s Rule 56.1 Stmt. ¶ 2.)

During his tenure at the Medical Center, Plaintiff developed a "deep friendship" with Frances Dirks, a Family Nurse Practitioner employed by the Medical Center in the Department of Community Medicine. (Movants' Rule 56.1 Stmt. ¶ 4; Pl.'s Rule 56.1 Stmt. ¶ 4.) In March of 2003, Ms. Dirks ended her relationship with Plaintiff and demanded that Plaintiff cease all personal contact with her, including any correspondence. (Movants' Rule 56.1 Stmt. ¶ 5; Pl.'s Rule 56.1 Stmt. ¶ 5.)

---

[1] Defendants have also moved for dismissal of the Complaint with prejudice pursuant to Federal Rule of Civil Procedure 37(b)(2) based on Plaintiff's disregard of Magistrate Judge Peck's order to disclose certain letters and communications. This motion is denied. Dismissal with prejudice "is a harsh remedy to be used only in extreme situations." Bobal v. Rensselaer Polytechnic Institute, 916 F.2d 759, 764 (2d Cir. 1990). The Court does not find this to be such an "extreme situation" and exercises its discretion not to impose the harsh remedy Defendants request.

2

Despite Ms. Dirks's request, Plaintiff continued to make attempts to communicate with her. (Movants' Rule 56.1 Stmt. ¶¶ 6, 7; Pl.'s Rule 56.1 Stmt. ¶¶ 6, 7.) Ms. Dirks's efforts to avoid further contact with Plaintiff included requesting that her manager assign her to a different floor from Plaintiff. (Movants' Rule 56.1 Stmt. ¶ 8; Pl.'s Rule 56.1 Stmt. ¶ 8.)

On May 23, 2006, Ms. Dirks lodged a harassment and stalking complaint against Plaintiff with Dr. Kellogg, the Chair of the Department of Community Medicine. (Movants' Rule 56.1 Stmt. ¶ 13; Pl.'s Rule 56.1 Stmt. ¶ 13.) A day or two later, Ms. Dirks filed a formal written complaint against Plaintiff with the Medical Center's Human Resources Department. (Movants' Rule 56.1 Stmt. ¶ 14, Ex. E; Pl.'s Rule 56.1 Stmt. ¶ 14.) In the complaint, Ms. Dirks alleged, inter alia, that: (1) despite being advised to cease all personal communications, Plaintiff continued to leave personal cards on her desk; (2) despite repeated directions that all personal communications stop, Plaintiff told Ms. Dirks that he would continue to send her Christmas cards for the rest of her life; (3) on April 27, 2006 Plaintiff forwarded an email message to Ms. Dirks at her home indicating that he would continue in his attempts to re-establish personal communication, stating, "I'm still here. I haven't disappeared nor have my warm regards toward you . . . I think that in the end our final conversation three years ago

3

summarized why I have not forgotten you, gotten over you, nor do I so desire"; (4) on April 27, 2006 Ms. Dirks found Plaintiff riding a bicycle on her route home from work, following behind her as she traveled the last two miles to her residence; (5) on April 28, 2006 Ms. Dirks once again told Plaintiff to cease any and all personal communications; (6) on April 28, 2006 Plaintiff advised Ms. Dirks that he was no longer living with his spouse in Westchester County and that he had moved by himself to an apartment one block from Ms. Dirks's residence in Brooklyn; (7) on the morning of May 22, 2006 as Ms. Dirks was leaving her home to commute to work on her bicycle, she found Plaintiff stationed at the corner of her street and he then traveled her same route, remaining within one to two blocks of her during the commute; (8) Plaintiff would involve himself in Ms. Dirks's practice, leaving Ms. Dirks with the impression that Plaintiff was using patient care as an indirect method of establishing personal contact; and (9) Plaintiff's behavior made Ms. Dirks feel threatened and as if she was being stalked.  (Movants' Rule 56.1 Stmt. ¶ 14, Ex. E; Pl.'s Rule 56.1 Stmt. ¶ 14.)

Dr. Kellogg then advised Plaintiff that Ms. Dirks had lodged a harassment complaint against him, granted Plaintiff a transfer to another worksite effective May 23, 2006, and ordered Plaintiff not to speak with or have anything further to do with Ms. Dirks.  (Movants' Rule 56.1 Stmt. ¶ 15; Pl.'s Rule 56.1

4

Stmt. ¶ 15.)  On or about May 25, 2006 Dr. Kellogg met with Plaintiff at Plaintiff's request.  During this meeting, Dr. Kellogg observed that Plaintiff was in distress and asked him whether he would like to speak with someone; Plaintiff consented to the offer of help.  (Movants' Rule 56.1 Stmt. ¶ 16; Pl.'s Rule 56.1 Stmt. ¶ 16.)  Dr. Kellogg then contacted Dr. Ruth Smith, the Medical Center's Director of Personnel Health Services, and requested that she arrange for a no-cost therapy session/consultation for Plaintiff, which she scheduled for May 26, 2006.  (Movants' Rule 56.1 Stmt. ¶ 17; Pl.'s Rule 56.1 Stmt. ¶ 17.)  On May 26, 2006 Jess Bunshaft, the Director of HR, informed Plaintiff that he was being formally suspended from his position pending the Medical Center's investigation of Ms. Dirks's complaint.  (Movants' Rule 56.1 Stmt. ¶ 18; Pl.'s Rule 56.1 Stmt. ¶ 18.)  Mr. Bunshaft informed Plaintiff that he was not to have any further contact with Ms. Dirks.  (Movants' Rule 56.1 Stmt. ¶ 18; Pl.'s Rule 56.1 Stmt. ¶ 15, 18; Second Am. Compl. ¶ 45.)

As part of the Medical Center's investigation, Plaintiff was required to meet with Dr. Kellogg and Dr. Smith on June 1, 2006.  (Movants' Rule 56.1 Stmt. ¶ 20; Pl.'s Rule 56.1 Stmt. ¶ 20.)  As a result of this meeting, Dr. Smith's assessment was that Plaintiff should undergo a psychiatric evaluation by the New York State Medical Society's Committee for Physician's

Health ("CPH") to determine Plaintiff's fitness for duty. (Movants' Rule 56.1 Stmt. ¶ 21; Pl.'s Rule 56.1 Stmt. ¶ 21.) Plaintiff refused to submit to a CPH evaluation because he had had a prior negative experience with CPH regarding his history of drug addiction. (Movants' Rule 56.1 Stmt. ¶ 21; Pl.'s Rule 56.1 Stmt. ¶ 21.)

In a letter dated June 6, 2006 Dr. Smith reiterated both her opinion that Plaintiff's actions raised serious concerns regarding his fitness for duty and her request that he undergo a CPH evaluation. (Movants' Rule 56.1 Stmt. ¶ 22; Pl.'s Rule 56.1 Stmt. ¶ 22; Second Am. Compl. Ex. B.) Smith informed Plaintiff that he was "required to seek the consultation and assistance of the Committee on Physician Health . . . immediately" and would "not be permitted to work at Saint Vincent's in any capacity unless and until [Smith] [was] advised by CPH that [Plaintiff] [had] been evaluated and [would] follow the recommendations of that evaluation." (Second Am. Compl. Ex. B; Movants' Rule 56.1 Stmt. ¶ 22; Pl.'s Rule 56.1 Stmt. ¶ 22.) Plaintiff responded by letter dated June 16, 2006 wherein he reiterated that he would not submit to a CPH evaluation and offered instead to have a private evaluation performed. (Movants' Rule 56.1 Stmt. ¶ 23; Pl.'s Rule 56.1 Stmt. ¶ 23.) On June 29, 2006, Plaintiff wrote a letter to Ms. Dirks. (Second Am. Compl. ¶ 56; Movants' Rule 56.1 Stmt. ¶ 24; Pl.'s Rule 56.1 Stmt. ¶ 24.)

The Medical Center terminated Plaintiff's employment on July 6, 2006. (Movants' Rule 56.1 Stmt. ¶ 25; Pl.'s Rule 56.1 Stmt. ¶ 25.) The Medical Center's termination letter to Plaintiff stated that: "[a]lthough you noted in your June 15, 2006, letter to Dr. Smith that you had offered to have a private evaluation, you indicated in your June 29, 2006 letter to Ms. Dirks, which you sent despite having been asked to cease communications with her, that not only would you not go to CPH, but you also would not get therapy if recommended. Given your refusal to cooperate in efforts designed to ensure your fitness for duty, St. Vincent's has no choice but to terminate your employment." (Movants' Rule 56.1 Stmt. ¶ 25; Pl.'s Rule 56.1 Stmt. ¶ 25.)

Plaintiff commenced suit in this Court alleging a myriad of claims related to his termination. On January 17, 2008 the Court dismissed all of Plaintiff's claims except his disability discrimination claims (Counts I and II) and his privilege termination claims (Counts VI and VII). (Movants' Rule 56.1 Stmt. ¶ 27; Pl.'s Rule 56.1 Stmt. ¶ 27.) Defendants now move for summary judgment on Plaintiff's four remaining counts.[2]

---

[2] In the jurisdictional section of his Complaint, Plaintiff asserts that "[j]urisdiction may also be appropriate under 42 U.S.C. §§ 1981, 1983, and 1985(3), as amended by the Civil Rights Act of 1991, Pub. L. No. 102-166." (Compl. ¶ 13.) However, Plaintiff has not asserted any claims arising under these provisions of the United States Code.

## LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that a court shall grant a motion for summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law." Rodriguez v. City of New York, 72 F.3d 1051, 1060-61 (2d Cir. 1995). The substantive law governing the case will identify those facts that are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the

nonmoving party, summary judgment is improper." Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 37 (2d Cir. 1994).

## DISCUSSION

### I. Plaintiff's Federal Law Claim

Plaintiff alleges that the Medical Center violated the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, et seq., when it fired him for refusing to submit to a psychiatric evaluation and any recommended treatment. Specifically, Plaintiff's Complaint appears to set forth two different arguments as to why Defendants' actions violated the ADA: (1) that by requiring him to undergo a psychiatric evaluation performed by CPH before being permitted to return to work the Medical Center violated the medical examinations and inquiries provision of the ADA, 42 U.S.C. § 12112(d)[3], and (2) that by terminating his employment because of a perceived mental illness the Medical Center violated the ADA's prohibition against discharging a qualified individual based upon a physical or mental impairment, 42 U.S.C. § 12112(a).

With respect to Plaintiff's first allegation, the ADA provides that an employer may "not require a medical examination and shall not make inquiries of an employee as to whether such

---

[3] Plaintiff also argues that Defendants' conduct violated 29 C.F.R. § 1630.13 and 29 C.F.R. § 1630.14, which are part of the ADA's implementing regulations. Section 1630.13 echoes the statutory prohibition against medical examinations and inquiries. Section 1630.14 identifies permissible medical examinations and inquiries.

9

employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). As the statute makes clear, this provision of the ADA prohibits only those medical inquiries that are not "job-related and consistent with business necessity." Id.; see Kressler v. Four Winds Hospital, No. 01 Civ. 10993, 2002 WL 1300057, at *2 (S.D.N.Y. June 11, 2002); Lent v. Goldman Sachs & Co., No. 97 Civ. 9413, 1998 WL 915906, at *8 (S.D.N.Y. Dec. 30, 1998). To fall under this exception to the general prohibition against medical examinations, an employer must show that the asserted business necessity is "vital to the business," that the examination "genuinely serves the asserted business necessity," and that "the request is no broader or more intrusive than necessary." Conroy v. New York Dep't of Correctional Servs., 333 F.3d 88, 97-98 (2d Cir. 2003). "The employer need not show that the examination . . . is the only way of achieving a business necessity, but the examination or inquiry must be a reasonably effective method of achieving the employer's goal." Id. at 98. The Second Circuit has explicitly stated that "ensuring that the workplace is safe and secure" may constitute a business necessity. Id. at 97.

In this case, the record is clear that the Medical Center's request that Plaintiff submit to a psychiatric exam with CPH

before being allowed to return to work was business-related and consistent with business necessity. The evidence before the Court clearly demonstrates that the Medical Center requested this examination in order to ensure workplace safety — to be certain that Plaintiff did not pose a threat to the safety of patients or other employees before he was permitted to return to work. The Medical Center only requested that Plaintiff undergo a psychiatric evaluation after one of its employees, Frances Dirks, submitted a formal complaint that Plaintiff was harassing and stalking her. In that Complaint, Ms. Dirks explicitly stated that she "felt threatened" by Plaintiff's behavior and, in connection with filing her complaint, Ms. Dirks advised the Medical Center that she "didn't feel safe." (Dirks Decl. p. 4, Aug. 7, 2008; Kellogg Dep. 85:25-86:2, Apr. 21, 2008.) Plaintiff's own deposition testimony indicates that he confirmed to the Medical Center that at least one of the allegations in Ms. Dirks's complaint — that he was living one to two blocks away from Ms. Dirks — was true. (See Rivera Dep. 218:15-18, Apr. 8, 2008; see also Smith Dep. 59:19-60:25, June 20, 2008.) As a result of these allegations, the Medical Center concluded it was possible that Plaintiff posed a danger to others, and in order to ensure the safety of its employees, Plaintiff would have to submit to an evaluation by CPH — the organization it determined to be the appropriate oversight body — before being

allowed to return to work. (See Smith Dep. 72:25-73:13, 77:9-78:25; Bunshaft Dep. 31:5-23, 34:6-35:8, Mar. 19, 2008.) The purpose of the CPH evaluation was to determine Plaintiff's "fitness for duty." (Movants' Rule 56.1 Stmt. ¶ 21; Pl.'s Rule 56.1 Stmt. ¶ 21.) Thus, the record is clear that the Medical Center requested the examination for an appropriate business necessity - ensuring a safe working environment for all of its employees. Additionally, the examination requested genuinely served this purpose and was no broader than necessary because the specific goal of the examination was merely to assess whether Plaintiff was fit to return to work and could conduct his duties without posing a danger to himself or others. Although Plaintiff suggested that as an alternative to CPH he have a "private evaluation," the Medical Center acted appropriately in declining to accept this compromise, particularly given its assessment that CPH was the appropriate oversight body for this type of matter. See Conroy, 333 F.3d at 98 (stating that "the employer need not show that the examination or inquiry is the only way of achieving a business necessity"); Bunshaft Dep. 31:11-15. Accordingly, the Medical Center's insistence that Plaintiff submit to a CPH evaluation did not violate the medical evaluations and inquiries provision of the ADA.[4]

---

[4] Although Plaintiff argues that there was no reason for him to submit to an

12

The Court similarly finds Plaintiff's second allegation, that the Medical Center discharged him because of a perceived mental illness in violation of the ADA, to be without merit. To withstand summary judgment, a Plaintiff raising a discrimination claim under the ADA must first present a prima facie case of discrimination by demonstrating that: (1) Defendants are subject to the ADA; (2) Plaintiff suffers from a disability within the meaning of the ADA; (3) Plaintiff could perform the essential functions of his job with or without reasonable accommodation; and (4) Plaintiff was fired because of his disability. See Reeves v. Johnson Controls Worldwide Servs., Inc., 140 F.3d 144, 149-50 (2d Cir. 1998). If a plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant to articulate "some legitimate, nondiscriminatory reason" for Plaintiff's discharge. See Valentine v. Standard & Poor's, 50 F. Supp. 2d 262, 282 (S.D.N.Y. 1999). If the defendant is able to do so, the plaintiff must then produce evidence that "the reason proffered by [the defendant] is a pretext for unlawful discrimination" and must raise "a genuine issue of material fact

---

exam with CPH given that a psychiatrist — the individual Dr. Kellogg had arranged for Plaintiff to talk with to help him through his distress — had already assessed him to be "fit to continue working," Pl.'s Rule 56.1 Stmt. ¶ 21, nothing in the record suggests that the Medical Center was aware of this assessment, see Smith Dep. 10:20-11:24; Kellogg Dep. 14:21-15:9. Additionally, even if the Medical Center was aware of this assessment, requiring an evaluation of fitness for duty by CPH — the organization the Medical Center determined to be the appropriate oversight body for matters such as this — would still constitute a request consistent with business necessity.

13

. . . as to whether [the defendant's] reason for discharging her is false and as to whether it is more likely that a discriminatory reason motivated [the defendant] to make the adverse employment decision." Id. (quoting Berk v. Bates Advertising USA, Inc., No. 94 Civ. 9140, 1997 WL 749386, at *3 (S.D.N.Y. Dec. 3, 1977)).

In this case, regardless of whether Plaintiff has met his prima facie burden, Plaintiff's ADA claim fails because Plaintiff has not set forth any credible evidence that the Defendants reasons are pretextual. Defendants have articulated two legitimate, nondiscriminatory reasons for Plaintiff's discharge. Specifically, in a letter to Plaintiff dated July 6, 2006, Defendant Bunshaft, on behalf of the Medical Center, informed Plaintiff that he was being dismissed from his employment for two reasons: (1) Plaintiff's refusal cooperate in efforts designed to ensure his fitness for duty — specifically, his failure to submit to a CPH evaluation and participate in any recommended treatment — and (2) Plaintiff's failure to follow the Medical Center's orders to cease communications with Frances Dirks. (Movants' Rule 56.1 Stmt. ¶ 25; Pl.'s Rule 56.1 Stmt. ¶ 25.) As discussed above, Defendants' request that Plaintiff submit to a CPH examination was appropriate given the Medical Center's legitimate business need to ensure that his return to work would not create a dangerous environment for patients or

employees. Additionally, Plaintiff's insubordination in failing to abide by the Medical Center's directives not to contact Ms. Dirks constitutes appropriate grounds for termination. See Rikhy v. Amc Computer Corp., No. 01 Civ. 7007, 2003 U.S. Dist. LEXIS 4804, at *12 (S.D.N.Y. Mar. 27, 2003) (stating that "[i]nsubordination and threatening behavior both constitute legitimate nondiscriminatory reasons for discharge in this Circuit"). Thus, in order to survive summary judgment, Plaintiff must demonstrate that these stated reasons for discharge are merely pretextual and raise a genuine issue of material fact as to whether it is more likely that a discriminatory reason motivated the Medical Center's employment decision. See Valentine, 50 F. Supp. 2d at 282.

The only evidence Plaintiff cites in support of his argument that he was terminated in violation of the ADA is the Medical Center's requirement that Plaintiff submit to a CPH psychiatric examination and any recommended treatment in order to return to work. However, as discussed above, this request was entirely permissible. The remainder of the record is devoid of evidence the Medical Center's stated reasons for discharging Plaintiff are merely pretextual.[5] Thus, Plaintiff has failed to

---

[5] Although the record indicates that Frances Dirks told Plaintiff he was "insane" on at least one occasion, Beard Dep. 31:20-32:9, Apr. 17, 2008, Plaintiff admitted in his deposition testimony that none of the Defendants ever even said they thought Plaintiff "was sick." (Rivera Dep. 128:22-129:17; Pl.'s Rule 56.1 Stmt. ¶ 28).

15

raise a genuine issue of material fact as to the reasons for his termination. Accordingly, Plaintiff's ADA claim is DISMISSED.

## II. Plaintiff's State Law Claims

Plaintiff's remaining claims — one for employment discrimination and two for breach of contract — all arise under New York State law. Pursuant to 28 U.S.C. § 1367, this Court may exercise supplemental jurisdiction over state law claims that are so related to a party's federal claims that "they form part of the same case or controversy." 28 U.S.C. § 1367(a). In general, however, "where the federal claims are dismissed before trial, the state claims should be dismissed as well." Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998). Because Defendants are entitled to summary judgment on Plaintiff's only federal law claim - his ADA claim - the Court declines to exercise supplemental jurisdiction over the remaining state law claims. Plaintiff's state law claims are therefore DISMISSED without prejudice to their resolution by a state court.

## CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment with respect to Count I is GRANTED. All remaining state law claims are DISMISSED without prejudice. Plaintiff's pending motion for a preliminary injunction, docket number 55, is DENIED as moot. Each side shall bear its own costs and attorney's fees for this action. Because no further

issues remain in this litigation, the Clerk of the Court is directed to close the case.

**SO ORDERED:**

                                                       Barbara S. Jones
                                                      **UNITED STATES DISTRICT JUDGE**

Dated:    New York, New York
            January 19, 2009

17